Philip J. B. Stanley and Patricia G. Stanley, Petitioners v. Commissioner of Internal Revenue, Respondent

Docket No. 20546–80.    Filed March 17, 1982.

*James V. O'Connor*, for the petitioners.
*Larry N. Johnson*, for the respondent.

OPINION

Featherston, *Judge*: Respondent determined a deficiency in the amount of $1,205 in petitioners' Federal income tax for 1977. After concessions by both parties, the following issues remain for decision: [1]

(1) Whether petitioners are entitled to exclude $3,600 from

---

[1]Respondent has conceded that petitioners are entitled to deduct $122 as depreciation for a camera used in petitioner-husband's business in 1977, and petitioners have conceded they are not entitled to deduct $22 as expenses for professional meetings in that year.

their gross income for 1977 as a scholarship or fellowship pursuant to section 117[2] and Pub. L. 93–483, sec. 4, 88 Stat. 1457 (1974), because of petitioner-husband's participation in the U.S. Army's General Dentistry Residency Program at Madigan Army Medical Center; and

(2) Whether petitioners are entitled to deduct $385, the cost of an Evelyn Wood Reading Dynamics course for petitioner-wife, as an education expense for 1977.

All the facts are stipulated.

Petitioners Philip J. B. Stanley and Patricia G. Stanley, husband and wife, filed a joint Federal income tax return for 1977. At the time the petition was filed, petitioner-husband (hereinafter Major Stanley) was stationed in Germany. The record does not disclose the legal residence of petitioner-wife (Patricia) at that time.

## 1. *The Scholarship Issue*

During 1977, Major Stanley, an officer and a dentist in the U.S. Army, served as a general dentistry resident participating in the General Dentistry Residency Program at Dental Activity, Madigan Army Medical Center, Tacoma, Wash. The General Dentistry Residency Program was a clinically oriented, 2-year formal training program for military dentists designed to prepare the participants for board certification in general dentistry.

The General Dentistry Residency Program provided its participants with both clinical and didactic training. The clinical training included providing dental care to patients and was aimed at advancing the resident's clinical skills in various dental specialty areas and teaching the delivery of optimum quality dental care. The didactic training included classroom instruction, staff and consultant lectures, seminars, symposia, literature reviews, and clinical pathology conferences aimed at imparting a thorough understanding of the treatment rationale in the various dental specialty areas. Generally, 80 percent of the training time was devoted to clinical training and 20 percent to didactic training.

---

[2] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

On their joint income tax return for 1977, petitioners excluded $3,600 from their gross income on the stated ground that such amount is "exempt under the provisions of Public Law 93–483, Sec. 4(a)-(c), 26 Oct 74 (as extended for 1977)." The notice of deficiency denied the exclusion.

Section 4(a) of Pub. L. 93–483, as amended, was enacted as a legislative exception to section 117 for qualified military personnel and is as follows: [3]

SEC. 4  APPLICATION OF SECTION 117 TO CERTAIN EDUCATION PROGRAMS FOR MEMBERS OF THE UNIFORMED SERVICES.

(a) IN GENERAL.—Any amount received from appropriated funds as a scholarship, including the value of contributed services and accommodations, by a member of a uniformed service who is receiving training under the Armed Forces Health Professions Scholarship Program (or any other program determined by the Secretary of the Treasury or his delegate to have substantially similar objectives) from an educational institution (as defined in section 151(e)(4) of the Internal Revenue Code of 1954) shall be treated as a scholarship under section 117 of such Code, whether that member is receiving training while on active duty or in an off-duty or inactive status, and without regard to whether a period of active duty is required of the member as a condition of receiving those payments.

This statute was enacted in response to a ruling by the Internal Revenue Service that amounts received by students while participating in the Armed Forces Health Professions Scholarship Program were not excludable under section 117 from their gross income because of their commitment to future service with the Armed Forces. The reason given in the ruling was that—

the exclusion from gross income for certain amounts received as a scholarship at an educational institution or as a fellowship grant generally does not apply if the amounts received represent compensation for past, present, or future employment services.

---

[3]Although this provision was initially made applicable only with respect to amounts received during the calendar years 1973, 1974, and 1975, Congress has subsequently amended it to apply to amounts received after 1975 and before 1985. Pub. L. 93–483, sec. 4, 88 Stat. 1458 (1974), as amended by Pub. L. 94–455, tit. XXI, sec. 2130, 90 Stat. 1922 (1976); Pub. L. 95–151, sec. 5, 91 Stat. 1355 (1977); Pub. L. 95–600, tit. I, sec. 161(a), 92 Stat. 2810 (1978); Pub. L. 95–615, tit. I, sec. 6, 92 Stat. 3098 (1978); Pub. L. 96–167, sec. 9(a), 93 Stat. 1278 (1979). Accordingly, the provision is applicable to the taxable year before the Court, i.e., the calendar year 1977.

H. Rept. 93–1405 (Conf.), Joint Comm. Explanation, U.S. Code Cong. & Adm. News 5989, 5990 (1974).[4]

Major Stanley does not qualify for the coveted exemption under Pub. L. 93–483 for several reasons. First, the amounts which he seeks to exclude from gross income were not "received from appropriated funds as a scholarship" within the meaning of Pub. L. 93–483, sec. 4. It is stipulated that Major Stanley "participated in the program while receiving the full pay and allowances of his current Army officer grade" and, further, that "Other than his full pay and allowances as a commissioned officer, * * * [Major Stanley] did not receive any additional compensation, benefits, or allowances by virtue of his participation in the General Dentistry Residency Program." Such pay and allowances were thus received as compensation and not "as a scholarship."

Moreover, again in the words of Pub. L. 93–483, Major Stanley did not receive "training under the Armed Forces Health Professions Scholarship Program (or any other program determined by the Secretary of the Treasury or his delegate to have substantially similar objectives)." It is stipulated that the "General Dentistry Residency Program does not come under, nor is it a part of, the Armed Forces Health Professions Scholarship Program." It is also stipulated that:

The Secretary of the Treasury or his delegate has at no time determined that the General Dentistry Residency program has substantially similar objectives as the Armed Forces Health Professions Scholarship Program.[5]

In addition, Pub. L. 93–483 applies only where the member of the Armed Forces receives his training "from an educational institution (as defined in section 151(e)(4) of the Internal Revenue Code of 1954)." Section 151(e)(4) specifies "an educa-

---

[4]In the instant case, it is stipulated that Major Stanley "was required to extend his active duty committment [sic] to the Army one year for each year he was a participant in the General Dentistry Residency Program." Because amounts received as compensation for past, present, or future employment may not qualify as a scholarship or fellowship (sec. 1.117–4(c)(1), Income Tax Regs.), petitioners clearly would not be (and in fact do not argue that they are) entitled to an exclusion under sec. 117 without regard to Pub. L. 93–483.

[5]The record contains a letter dated Apr. 20, 1978, addressed to the Office of the Secretary of the Treasury by the Department of the Army in which a ruling on this subject was requested. In a letter dated July 28, 1978, addressed to the Department of the Army, the Internal Revenue Service requested additional information on which to base a ruling. The record does not show that the requested information was ever supplied.

tional organization described in section 170(b)(1)(A)(ii)." Dealing with percentage limitations on charitable contributions, section 170(b)(1)(A)(ii) refers to:

an educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on.

The stipulated facts do not show that the Dental Activity, Madigan Army Medical Center, meets this educational institution requirement of Pub. L. 93–483.

For all of these reasons, we think it quite clear that Pub. L. 93–483 does not entitle Major Stanley to the claimed exclusion under section 117. Major Stanley argues, nonetheless, that he was instructed by his Army superiors to claim the disputed exclusion and that it should, therefore, be upheld. The stipulated documents indicate that it may be true that he was so instructed. The statutes enacted by Congress, however, and not the directions of a military officer, control the allowability of tax exemptions and gross income exclusions.

## 2. The Educational Expense Issue

On their 1977 joint income tax return, petitioners deducted $385 for "employment educational expenses." The deduction was disallowed in the notice of deficiency on the ground that "it has not been established that these expenses were incurred primarily to maintain or improve skills required in your present employment, or to meet the express requirements of your employer." Instead, the notice states, "the expenses were primarily for personal purposes."

The only facts of record on the reasons for this expenditure are set forth in the stipulation as follows: [6]

During 1977, petitioner-wife, Patricia G. Stanley, was employed as a nurse

---

[6]On their return, petitioners listed the subject studied by Patricia as "speed reading" and linked the course to her employment because it was allegedly taken "to increase skill & speed for reading professional periodicals as required for maintaining license." Even if we assume that this course was a speed reading course and that it increased Patricia's comprehension of professional periodicals as well as the celerity with which she read them, the deduction was correctly denied. Petitioners failed to show a "direct and substantial relationship" between the course and maintenance of the license or of any other skills required in her employment. See *Carroll v. Commissioner*, 51 T.C. 213, 218 (1968), affd. 418 F.2d 91 (7th Cir. 1969).

by Manpower, Inc. earning total wages of $739.80 during the taxable year 1977.

Petitioner-wife expended $385.00 during 1977 for an Evelyn Wood Reading Dynamics course. This amount was deducted by petitioners as an educational expense related to her employment on their 1977 joint U.S. Individual Income Tax Return.

The pertinent legal standard for determining the allowability of claimed educational expense deductions is set forth in section 1.162–5(a), Income Tax Regs., as follows:

Sec. 1.162–5. Expenses for education.

(a) *General rule.* Expenditures made by an individual for education * * * which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses * * * if the education—

(1) Maintains or improves skills required by the individual in his employment or other trade or business * * * [7]

The bare stipulated facts—that Patricia was employed as a nurse and that she took a reading course—are not sufficient to show that the course maintained or improved "skills" which were "required" in her employment. Those facts provide no enlightenment on the nature of the instruction obtained in the reading course, what reading skills were required in her employment as a nurse, and whether the course, in fact, was designed to improve the required skills. We hold that petitioners have not shown they qualify for the claimed deduction.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[7]Subsection (b)(2) and (3), referred to in this regulation, deal with minimum education requirements for employment and qualification for a new trade or business. There is no suggestion that the expenditures in issue are barred by those provisions.